UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MULTIBANK, INC.,                                      :
                                                      :
                              Plaintiff,              :
                                                      :
              -against-                               :        Adv. Pro. No. 18-01606 (MEW)
                                                      :
ACCESS GLOBAL CAPITAL LLC, JAMES        :
BESCH, GLOBAL COMMODITIES GROUP,        :
LLC AND NOVEL COMMODITIES S.A.,         :
                                                      :
                              Defendants.             :
------------------------------------------------------------x

## DECISION DENYING MOTION TO TRANSFER REMOVED
## ACTION AND GRANTING MOTION TO ABSTAIN AND REMAND

Access Global Capital LLC ("**Access Global**") and Global Commodities Group, LLC

("**Global Commodities**," and, together with Access Global, the "**Debtors**") are debtors in

chapter 11 cases that are pending in the United States Bankruptcy Court for the District of New

Jersey. The Debtors also are defendants in a civil action that was filed in the New York State

Supreme Court in February 2016, long prior to the date of the New Jersey bankruptcy filings.

The plaintiff in the New York State court lawsuit is a Panamanian company named Multibank,

Inc. The named defendants include the two Debtors plus an individual named James Besch and

a Swiss company named Novel Commodities S.A. ("**Novel**"). Multibank claimed that the

defendants breached certain contracts and committed fraud, made negligent misrepresentations

and/or breached fiduciary duties in connection with the purchase of insured accounts receivable.

In January 2017 the New York State Supreme Court ruled that Multibank had properly

pleaded a claim for breach of contract by Mr. Besch and Debtor Access Global and had also

properly pleaded a claim for tortious interference of contract against Debtor Global

Commodities. Although the complaint in the state court action alleged that Mr. Besch signed the

1

relevant contracts in his individual capacity and that Mr. Besch was a contracting party, the state court held in its January 2017 ruling that Mr. Besch had not signed the contracts in his personal capacity. However, the state court permitted the contract claim to proceed against Mr. Besch based on allegations that Mr. Besch and the Debtors were "alter egos" of each other. The court dismissed other claims against the Debtors and Mr. Besch, and directed the entry of a default judgment against Novel in the amount of $4,057,693.53. *See* Decision & Order, *Multibank, Inv. v. Access Global Capital LLC*, Index No. 650637/2016 (N.Y. Sup. Ct. N.Y. Cnty. January 9, 2017) [Dkt No. 115 at 23-24].

One portion of the state court decision that is of particular relevance is the following statement as to the judgment to be entered against Novel:

> ORDERED that the motion by plaintiff Multibank, Inc. for a default judgment against defendant Novel Commodities S.A. is granted, and the Clerk is directed to enter judgment in favor of said plaintiff, and against said defendant, in the amount of $4,057,693.53 plus 9% statutory pre-judgment interest from September 23, 2011 to the date judgment is entered; and it is further

> ORDERED that such judgment is hereby severed and the action shall continue against the remaining defendants . . .

*Id*. at 24. The parties disagree as to the nature and significance of the severance of the judgment against Novel, as discussed more fully below.

On June 14, 2018, Access Global and Global Commodities filed their voluntary chapter 11 petitions in New Jersey. Shortly thereafter they filed a notice of removal to remove the Multibank state court action from the New York State Supreme Court to the United States District Court for the Southern District of New York. They also filed a motion to transfer the removed Multibank state court action to the United States District Court for the District of New Jersey, where presumably it would then be transferred to the Bankruptcy Court for that District. The District Court has referred the removed action, and pending transfer motion, to this Court,

pursuant to standing orders under which bankruptcy-related matters are automatically referred to the bankruptcy judges.

Multibank has opposed the transfer motion and has also urged that I return the matter to the New York State Supreme Court on various abstention and remand grounds. *See* 28 U.S.C. §§ 1334(c), 1452. The Debtors have suggested that I should transfer the case to the New Jersey District Court, *see* 28 U.S.C. §§ 1404(a), 1412, and permit that court (or the New Jersey bankruptcy court) to decide the abstention and remand issues. Multibank argues that I should decide the abstention and remand issues before considering the requested transfer.

While the parties disagree as to the order in which I should consider these issues, it is quite plain that in this particular case the issues overlap. From Multibank's perspective, for example, the consideration of whether mandatory abstention is applicable depends at least in part on whether the "action" against the Debtors and Mr. Besch has already been severed from the action against Novel. The severance issue, in turn, overlaps with some of the issues that are relevant to the transfer that the Debtors are seeking. On the other hand, the whole purpose of the removal, from the point of view of the Debtors, is to obtain a transfer of the case to New Jersey. No party has argued that any purpose would be served by keeping the case in this Court; instead, the ability to transfer the action is key to all of the Debtors' arguments as to whether I should exercise my discretion to remand the case or as to whether I should abstain on discretionary grounds. In this particular case, therefore, it is more efficient to discuss all of the issues together, while of course recognizing and giving full effect to the "mandatory abstention" provisions to the extent they are applicable.

## Relevant Statutes

The Debtors argue that I should transfer the removed matter to New Jersey pursuant to section 1412 of title 28 of the United States Code or, alternatively, pursuant to section 1404(a). *See* 28 U.S.C. §§ 1404(a), 1412. Multibank contends that the matter is subject to mandatory abstention pursuant to section 1334(c)(2) of title 28, or alternatively that I should exercise my discretion to abstain and/or to remand pursuant to sections 1334(c)(1) and 1452(b) of title 28. *See* 28 U.S.C. §§ 1334(c), 1452(b).

I have previously ruled that one of the statutes cited by the parties (section 1412 of title 28) is applicable only to a proceeding that arises "under" the Bankruptcy Code and is not available for a proceeding that "arises in" or is merely "related to" a pending bankruptcy case. *See Onewoo Corp. v. Hampshire Brands, Inc.*, 566 B.R. 136, 139-40 (Bankr. S.D.N.Y. 2017).

Section 1412 states that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The reference to title 11 is, of course, a reference to the Bankruptcy Code. As I noted in *Onewoo*, the wording of section 1412 differs from many other sections of title 28 that relate to bankruptcy cases and to bankruptcy-related matters. *Onewoo*, 566 B.R. at 139. For example, section 1334 provides that the district courts have jurisdiction over "civil proceedings arising under title 11 or arising in or related to a case under title 11." *See* 28 U.S.C. § 1334(b). Section 157(a) provides that the district court may refer civil proceedings "arising under title 11, or arising in or related to a case under title 11" to the bankruptcy judges pursuant to section 157(a) of title 28. *See* 28 U.S.C. § 157(a). Section 1409 of title 28 defines the proper venue for civil proceedings "arising under title 11 or arising in or related to a case under title 11." *See* 28 U.S.C. § 1409.

There is a substantial body of case law under these provisions of title 28 that deals with the separate questions of whether a matter arises "under" title 11, or whether it "arises in" a case under title 11, or whether it is "related to" a case under title 11. However, section 1412 does not use all three of those phrases. Instead, section 1412 only refers to transfers of cases or proceedings "under" title 11. There is no reference in section 1412 to cases or proceedings "arising in" or "related to" cases under the Bankruptcy Code.

The Multibank state court action plainly is not a case or proceeding "under" the Bankruptcy Code. A case is "under" title 11 if it is the main bankruptcy case itself, and a proceeding is one that is "under" the Bankruptcy Code if it asserts causes of action that are created by the Bankruptcy Code itself. Neither of those situations applies here. The matter that has been removed to me was filed long before any bankruptcy case was pending. It asserts breach of contract claims and other state law theories of liability and asserts no claims created by the Bankruptcy Code. The action also is based entirely on conduct that pre-dates the bankruptcy filings.

The Debtors have argued in recent submissions that Multibank has filed proofs of claim in the New Jersey bankruptcy cases and that the resolution of the claims against the Debtors are "core" proceedings as to the Debtors. However, the filing of the claims in the New Jersey cases does not change the nature of the claims themselves. The state court action, and the claims asserted in it, did not arise "under" the Bankruptcy Code, and the proofs of claim do not change that fact.

As I noted in my decision in *Onewoo*, there are some prior court decisions that have held that section 1412 grants authority for the transfer of lawsuits that relate to pending bankruptcy cases, even if the lawsuits assert claims that do not arise "under" the Bankruptcy Code. *Onewoo,*

566 B.R. at 139-140.  The Debtors urge me to follow those decisions, and some additional decisions they have cited.  However, I am not persuaded by the Debtors' arguments or by the cited decisions, and I elect instead to reaffirm my own prior decision in the *Onewoo* case.

One argument that has been made in some prior cases is that section 1412 must govern the transfer of all bankruptcy-related actions and proceedings that are removed to the federal courts, because section 1412 contains a reference to title 11 and section 1404(a) refers only to civil actions generally.  *See, e.g.*, *Dunlap v. Friedman's Inc.*, 331 B.R. 674, 677 (S.D. W. Va. 2005).  However, section 1412 does *not* apply generally to all bankruptcy-related cases and proceedings.  For example, it does not say that a court may transfer any case or proceeding over which the court has jurisdiction under section 1334.  Instead, section 1412 expressly applies to cases or proceedings "under" the Bankruptcy Code.  Treating the statute as though the limiting language simply does not exist is not a proper way of interpreting the statute.

Another argument that has been made is that a former statute, section 1475 of title 28, provided that a bankruptcy court could transfer "a case under title 11 or a proceeding arising under or related to such a case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties."  *See* Pub. L. No. 95-598, § 1475, 92 Stat. 2549, 2670.  This provision was repealed as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984.  Some courts have argued that the 1984 amendments to title 28 were only intended to address issues raised by the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982); under this theory, section 1412 was not intended to change anything else, and so section 1412 should be read as though it has the same terms and the same scope as the former section 1475.  *See Dunlap*, 331 B.R. at 678-79.  I respectfully disagree.  I do not believe it is proper, in interpreting a statute, to add words to it based on the fact that a

prior statute was worded differently.  If Congress changed the language, the presumption ought to be that the change was deliberate.

The court in *Dunlap* noted that section 1409 of title 28 governs the venue of "proceedings arising under title 11 or arising in or related to a case under title 11" and held that the word "proceedings" (as used in section 1412) should be interpreted as though it included all of the words that are used to modify the term "proceedings" in section 1409.  *Id.* at 678-79.  Again, I respectfully disagree.  The word "proceeding" does not appear by itself in section 1412.  Instead, the statute uses the phrase "a case or proceeding ***under title 11***."  28 U.S.C. § 1412 (emphasis added).  The modifying language means what it says.  If the word "proceeding" were automatically interpreted to mean a "proceeding arising under title 11 or arising in or related to a case under title 11" then the additional qualifying words "under title 11," which plainly appear in section 1412, would serve no function at all.  Ignoring the words that the statute actually uses, and substituting other words that do not appear in the statute, is not a proper way to interpret it.

Finally, some courts have referred to the fact that Rule 7087 of the Federal Rules of Bankruptcy Procedure refers to the transfer of "adversary proceedings" pursuant to section 1412.  *See, e.g.*, *In re Bruno's, Inc.*, 227 B.R. 311, 323 (Bankr. N.D. Ala. 1998).  But there are adversary proceedings that assert claims that arise "under" the Bankruptcy Code, such as fraudulent transfer claims or preference claims.  The fact that Rule 7087 refers to section 1412 does not imply that section 1412 has a broader scope than its actual wording would support.

Many of the decisions that apply a broad scope to section 1412 reflect a clear frustration with the limited statutory language and a desire to enforce an approach that might make more sense.  But the statutory language is clear.  Section 1412 applies by its terms only to cases or proceedings "under" the Bankruptcy Code.  There is nothing ambiguous about that language.  It

is plainly different from the language used elsewhere in title 28, including in other provisions (such as section 1409) that almost immediately precede section 1412. I am not free to ignore the limiting language, or to treat section 1412 as though it includes extra language that Congress used in other sections of title 28 but that Congress did not include in section 1412 itself. Nor am I free to rewrite section 1412 based on arguments that it would make more sense if section 1412 had a broader application. The terms of section 1412 simply do not grant me the power to transfer a New York State litigation that is not a case or proceeding "under" the Bankruptcy Code.

As I noted in *Onewoo*, the Second Circuit Court of Appeals has not ruled on this issue, but there is a very long line of decisions in the District Court of this district that agree with this conclusion and that have held that section 1412 only applies to cases and proceedings "under" the Bankruptcy Code. *See Onewoo*, 566 B.R. at 140. It is not necessary to repeat those citations here but they provide further support for my conclusions.

### Whether the Removed Action Could Have Been Filed in
### <u>Federal Court in the Absence of Jurisdiction under Section 1334</u>

Civil actions may be transferred under section 1404(a) of title 28, and in many respects the standards that courts apply in ruling on transfer motions under sections 1404(a) and 1412 are similar. But there is one big difference. Under section 1404(a), transfer is not permitted unless the transferee district is one where the action "might have been brought" in the first place, unless all parties consent to the transfer. 28 U.S.C. § 1404(a).

Multibank does not consent to a transfer, so I cannot transfer the case to the New Jersey District Court unless it could have been filed there in the first instance. Mr. Besch and the Debtors currently favor the transfer motion, but the Supreme Court held long ago that this kind of after-the-fact "consent" by defendants to a transfer is not sufficient to establish, under section

1404(a), that the case could have been filed in New Jersey. Instead, the requirement that the transferee district be a place where the case could have been brought means that the transferee district must be a place where the plaintiff, as a matter of right, could have filed the action in the first place. *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).

In this case, Multibank is a foreign entity. One of the original defendants (Novel) is also a foreign entity. The Debtors argued in their initial papers that the presence of foreign entities on both sides did not destroy diversity because US defendants had also been named. *See* Access Global Capital LLC's and Global Commodities Group, LLC's Reply (i) in Opp'n to Pl.'s Mot. to Remand Action to the New York Supreme Court, and (ii) in Further Support of Mot. to Transfer Action [Dkt. No. 11] (the "Debtors' Opposition Memorandum") at 6-7. However, that argument was plainly wrong. *See In re Arab Bank*, 808 F.3d 144, 160 ("[D]iversity is lacking . . . where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens") (quoting *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir.2002)).

Novel's presence as a party to the action would bar a transfer to the New Jersey District Court under section 1404, because an action asserting state law claims filed by Multibank (a foreign entity) that included Novel (another foreign entity) as a defendant could not have been brought in the New Jersey District Court. Novel's presence as a party would also affect the mandatory abstention analysis under section 1334(c)(2) of title 28, which requires this court to abstain (and to return the case to state court) if the action "could not have been commenced in a court of the United States absent jurisdiction under this section" and if the action could be timely adjudicated by the state court where an action is pending. If diversity jurisdiction is lacking, and

if section 1334 is the sole basis for federal jurisdiction, then mandatory abstention would be applicable so long as the state court were capable of timely adjudicating the removed action.

The Debtors argued in their reply papers, however, that Novel was simply a "dispensable" party and that Novel could be severed from the removed action pursuant to Fed. R. Civ. P. 21 if necessary to avoid an impediment to transfer. *See* Access Global Capital LLC's and Global Commodities Group, LLC's Reply to Pl.'s Opp'n to Mot. to Transfer Case [Dkt. No. 15] (the "Debtors' Reply Memorandum") at 4-5. The Debtors also argued that the state court had already severed the judgment against Novel and that as a result Novel was not a party to the removed action. *Id.* at 5.

At oral argument on September 12, 2018, I noted that the Debtors had only raised the "severance" issues in their final reply papers and that Multibank had not had a fair opportunity to address the Debtors' contentions. I also noted that the effect of the New York State court's order that the judgment against Novel be "severed" was not clear and required further briefing. I therefore directed the parties to submit further briefs as to the meaning and effect of the state court's order, and more particularly: (a) whether the order had the effect of creating two separate actions in the New York State court, and (b) if so, whether the application of the transfer and abstention statutes should be based on the identities of the parties to the original action, or whether instead there is now a separate "action" that has been removed to this Court that should be treated for transfer and abstention purposes as though it only involves claims against the Debtors and Mr. Besch and as though Novel had never been a party to it. I further noted that the Second Circuit Court of Appeals has held that in some circumstances a court may sever claims against one or more defendants who are only indirectly connected to a matter for the purpose of permitting the transfer of an action against the remaining defendants, and I asked the parties to

address those authorities and how, if at all, they should be applied here.  *See Wyndham Assocs. v. Bintliff,* 398 F.2d 614 (2d. Cir. 1968).

The parties have made their additional submissions.  While I had hoped there would be clear answers, there are not.

Strictly speaking, a "severance" of actions occurs when an order is entered that "takes one action and separates it into two or more . . . While the severance cleaves the action in two and sends each claim off as a distinct case for all purposes (separate judgments, etc.), the separate trial can often accomplish the same thing without the cleavage."  *See* Siegel's New York Practice § 127; *see also id.* at § 129 ("The severance is the ubiquitous device for lopping off claims and making separate actions of them."); Carmody-Wait 2d New York Practice 18:1 ("Severance of actions divides one lawsuit into two or more independent causes of action, as distinguished from severance of issues or parties for separate trials within the same lawsuit. Unlike separate trials within the same cause of action, causes of action created by severance are prosecuted separately and result in separate judgments").  In practice, however, the word "severance" is often used in a broader sense.  "Severance" is often used to describe a situation in which issues are separated from each other for certain purposes (separate trials being a common example) but nevertheless remain part of the same action.  *See, e.g.*, *Vogel v. Merck & Co., Inc.*, 476 F.Supp. 2d 996, 999 (S.D. Ill. 2007) (noting the confusion and holding that "the mere fact that an order of a state court purports to have 'severed' claims generally is insufficient to make a case removable"); *see also Phillips v. Unijax, Inc.*, 625 F.2d 54, 56 (5th Cir. 1980); *Taylor v. Fortis Ins. Co.*, No. CV-08-65-E-BLW, 2008 WL 1803930 at *3 (D. Id. Apr. 17, 2008); *Johnson v. Snapper Div. of Fuqua Indus., Inc*, 825 F.Supp. 127, 129 (E.D. Tex. 1993).

In this case, the parties agree that the state court issued its order pursuant to section 3215 of the New York Civil Practice Law and Rules. Section 3215 provides that if a default judgment is entered "against less than all defendants, the clerk shall also enter an order severing the action as to them." *See* N.Y.C.P.L.R. § 3215(a). The parties also agree that section 3215 includes this language to address a procedural problem that arose under prior New York practice, under which state courts were unable to enter a judgment (including a default judgment) against only one defendant in a multi-defendant case, at least where there were allegations of joint and several liability. *See Citibank Eastern, N.A. v. Minbiole*, 377 N.Y.S.2d 727, 728 (App. Div. 3d Dep't 1975). The severance device is the mechanism that as a matter of New York law permits separate judgments to be entered. *See Grullon v. Servair, Inc.*, 504 N.Y.S.2d 14, 15 (App. Div. 2d Dep't 1986). In this regard, section 3215 allows the state court, through an action that is denominated as a "severance," to accomplish what the federal courts could do more directly pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

A separate judgment under Rule 54(b), however, does not give rise to a separate action under federal practice and procedure. Under federal practice, only a severance of the kind envisioned by Rule 21 results in the creation of a separate action. *See* Fed. R. Civ. P. 21. Notably, Black's Law Dictionary also explicitly distinguishes between a severance that gives rise to a separate action and a severance that merely allows otherwise interlocutory orders to become final. It defines "severance" as "[t]he separation, by the court, of multiple parties' claims *either* to permit separate actions on each claim *or* to allow certain interlocutory orders to become final." *See Severance*, *Black's Law Dictionary* 1583 (10th ed. 2014) (emphasis added).

It appears that the severance of the "judgment" against Novel merely had the effect of creating an order that could be immediately enforced, and that it has not been treated by the

parties and the New York State court as though it gave rise to a new and separate action. For example, the judgment against Novel was entered in the same case, with the same index number, as the case against the Debtors and Mr. Besch that has been removed to this Court. Requests for discovery or other actions in aid of enforcement of that judgment also continue to be filed in the same state court action. Indeed, it was not until the Debtors filed their final reply papers on September 7, 2018 that the Debtors first took the position that the state court had already severed the action against Novel. Prior to that time the Debtors did not dispute Novel's status as a party; the Debtors argued instead that there was diversity jurisdiction despite Novel's presence in the case. *See* Debtors' Opposition Memorandum at 6-7.

We have attempted to find guidance, in the New York cases or procedural rules, as to whether a true "severance" of claims (one that actually divides a case into separate cases) ordinarily triggers the assignment of a new index number to the "severed" action. We have found some instances in which courts have ordered the assignment of new index numbers to actions that have been severed from the initial actions of which they were a part. *See, e.g.*, *Belair Care Ctr., Inc. v. Cool Insuring Agency, Inc.*, Index. No. 901476/2014, 2017 WL 6816689, at *2 (Sup. Ct. Albany Cnty. Nov. 6, 2017) (noting that a prior severance had been granted and that the court had directed the plaintiffs to circulate a "complaint to be filed under a separate index number" for the severed action). It seems intuitive that if actions have truly been separated they should ordinarily be given different case numbers. But we have found no conclusive indication in the applicable New York rules and case law as to what the ordinary practice is.

Nor did we find helpful guidance as to whether the "severance" permitted by section 3215 of the CPLR differs from the "severance" that might occur when one litigation is literally

split into two separate actions that thereafter proceed on their own separate tracks with separate discovery, separate trials and separate filings. The Debtors have cited to the decision in *Frolish v. Ryder Truck Rental, Inc.*, 404 N.Y.S. 2d 929 (App. Div. 3d Dep't 1978), in which a default judgment had been "severed" under CPLR § 6215 and the plaintiffs thereafter sought to hold the remaining defendants liable on theories of collateral estoppel and res judicata. The appellate division quite properly rejected that notion. In the course of doing so it observed that as a result of the severance the remaining defendants were not part of the "action" in which judgment had been rendered. *Id.* at 929. But it is quite clear in context that what the court was holding was that the remaining defendants were not subject to the severed "judgment," regardless of whether that judgment was in the same action or not. The distinction that is relevant here – namely, whether the severance of the "judgment" was just for purposes of separate enforcement or instead was for the purpose of creating an independent action – was not present in the *Frolish* case and was not decided by that court.

Some prior federal court decisions have considered whether an order that severs claims for the purpose of separate trials is an order that has actually created two independent cases, but the factors considered by those courts are not particularly helpful here. For example, these decisions consider whether the "severance" order merely contemplates a separate trial rather than the entry of a separate judgment. *See Johnson v. Snapper Div. of Fuqua Indus., Inc*, 825 F.Supp. 127, 129 (E.D. Tex. 1993). Certainly an order that merely bifurcates trials, without the potential even for a separate judgment, would hardly qualify as the kind of "severance" that creates a separate case. But that does not necessarily mean that the converse is true, and that the entry of a separate "judgment" automatically should be treated as giving rise to a separate action. Separate

trials are not the only kinds of "severance" rulings that may fall short of actually giving rise to a separate action.

Another factor identified by the *Johnson* court was whether the severed claims were treated as a separate case to which a new case number was assigned. *Id.* Here, the severance of the Novel judgment did not result in the creation of a new, independent action or the assignment of a new case number. That factor strongly suggests that the severance did not create a separate action against Novel. But some prior cases have found a true "severance" to exist even in the absence of the assignment of a new case number, at least where the court felt that the circumstances made clear that a true severance of actions had occurred. *See, e.g.*, *Crump v. Wal-Mart Group Health Plan*, 925 F.Supp. 1214, 1219 (W.D. Ky. 1996) (holding that the state court's failure to assign a different civil action number to a severed action "is a difference that makes no difference" since the state court had made clear that the severed action would be treated as a separate action and had realigned the parties accordingly).

It appears to the Court, in this case, that if Novel were to wish to reopen its default, it would need to file a motion to do so in the action to which it was originally named as a party (which is the action that has been removed to this court), as there is no other pending action in which such an application could be made. As noted above, proceedings to enforce the judgment against Novel also are part of the action that has been removed to me. The notice of removal refers to "the above-entitled civil action from the Supreme Court of New York, County of New York (Index No. 650637/2016)" and expressly encompasses "all claims and causes of action asserted therein." *See* Notice of Removal, *Multibank, Inc. v. Access Global Capital LLC, et al.*, Civ. A. No. 18-cv-05664 (S.D.N.Y. June 21, 2018). In their initial papers the Debtors

themselves treated the removal as though it included the action against Novel, and it was not until the Debtors filed reply papers that the Debtors argued otherwise.

Regardless of the "severance" of the Novel judgment, as a practical matter the case against Novel has not been completely delinked from the action against the Debtors and Mr. Besch. As a result, it does not appear that I could transfer the action to New Jersey, as the action presently stands, without also transferring to the New Jersey federal court any actual or hypothetical further proceedings that might occur with regard to Novel. Since that is the case, I do not see how I could treat the removed action as though Novel is no longer a party to it and as though the state court has separated all proceedings regarding Novel from the proceedings against the Debtors and Mr. Besch, as the Debtors urge me to do. The severance of the judgment permits enforcement actions to continue against Novel, but that appears merely to be the kind of "severance" that permits an otherwise interlocutory order to be treated as final for purposes of appeal, and does not appear in any observable respect to have created a completely separate action against Novel that no longer bears any connection to the removed action.

The burden of showing that the Multibank action may be transferred under section 1404(a) rests with the Debtors, who are seeking the transfer. *See Mohsen v. Morgan Stanley & Co., Inc.*, No. 11 Civ. 6751, 2013 WL 5312525, at *3 (S.D.N.Y. Sept. 23, 2013) (citations omitted). It is therefore the Debtors' burden to prove that the alleged "severance" of the judgment against Novel had the effect of completely separating the actions and of creating a new action against the Debtors and Mr. Besch that is independent of the action against Novel and that may be transferred under section 1404(a). The Debtors have not carried that burden.

In addition, the mandatory abstention provisions of section 1334(c)(2) require me to abstain from this matter if the only ground for federal jurisdiction is the fact that the removed

action is related to a bankruptcy case and if the state court action could be timely adjudicated by the state court. Since Novel remains a party to the case it is plain that the sole ground for federal jurisdiction is the relation of the removed Multibank action to the New Jersey bankruptcy cases. Mandatory abstention therefore applies in the absence of a showing that the action could not be timely adjudicated in the New York State court.

## Remand and Abstention

It is the Debtors' burden to show that mandatory abstention is not applicable, including the burden of proving that a matter could not be timely adjudicated in the state court. *See Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 582 (2d Cir. 2011); *In re AOG Entrn't, Inc.*, 569 B.R. 563, 573 (Bankr. S.D.N.Y. 2017) (holding that courts since *Parmalat* have placed the burden of proof on the party opposing remand); *MHS Capital v. Goggin*, No. 16-cv-1794 (VM), 2016 WL 3522198, at *4 (S.D.N.Y. June 13, 2016) (holding that the party opposing abstention has the burden of showing that an action is not capable of timely adjudication in the state court); *Allstate Ins. Co. v. Ace Sec. Corp.*, No. 11 Civ. 1914 (LBS), 2011 WL 3628853, at *7 (S.D.N.Y. Aug. 17, 2011). The Debtors have failed to carry that burden. The Debtors contend that the case was not trial-ready, but the determination of whether a case may be timely adjudicated by the state court does not depend on whether the case is trial-ready. Such a determination ordinarily requires a comparison of the dockets in the different courts and of factors that might indicate that a decision is required more quickly than the state court will be able to provide. *See Parmalat*, 639 F.3d at 580-81. The Debtors have not even attempted to make such a showing in this case.

Even if abstention were not required it appears that in the absence of a potential transfer there is no reason to keep the case in this Court. The entire argument in favor of removal hinged

on the availability of transfer, and on allegations that it would be more efficient for the Multibank action to be transferred to the bankruptcy court where the underlying bankruptcy cases are pending. No party has argued that there is any efficiency benefit or any other reason why the cases should be in this court as opposed to the New York State court, and I cannot think of any.

### The Suggestion that This Court Should Sever the Action Against Novel to Permit a Transfer of the Remainder of the Case

In *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968), the Second Circuit Court of Appeals held that a federal court may issue an order of severance in order to permit the transfer of a portion of a litigation to another court, "at least in cases where . . . the defendants as to whom venue would not be proper in the transferee district are alleged to be only indirectly connected to" the matters that form the main subject matter of the action. The theory of the *Wyndham* decision is that if this power is invoked then a new and separate "action" exists that does not involve the severed party. It is implicit in *Wyndham* that if this power is invoked a court should treat the newly created action as though the severed party had never been part of it. If a different view were taken – if the transferability of the action were to be based on the persons who were parties to the action prior to the severance – then the severance would not actually have the effect of permitting a transfer under section 1404(a).

Most lower courts have held that the use of severance powers to create a transferable action is something that should be done only in exceptional circumstances. *See Crede CG III, Ltd. v. 22nd Century Grp., Inc.*, No. 16 Civ. 3103 (KPF), 2017 U.S. Dist. LEXIS 8143 at *30 (S.D.N.Y., Jan. 20, 2017); *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 24-25 (S.D.N.Y. 2016). They have particularly noted that courts should hesitate to use severance powers to create federal jurisdiction that otherwise would not exist. *See Kips Bay Endoscopy Center, PLLC v. Travelers*

*Indem. Co.*, No. 14 Civ. 7153 (ER), 2015 WL 4508739, at *4 (S.D.N.Y. July 24, 2015) (noting that courts should be more hesitant to use severance powers to create federal court jurisdiction that otherwise would be lacking); *Sons of the Revolution in New York, Inc. v. Travelers Indemnity Co. of America*, No. 14 Civ. 03303 (LGS), 2014 WL 7004033, at *2-3 (S.D.N.Y. Dec. 11, 2014) (expressing reluctance to use severance powers to create federal court jurisdiction that otherwise would be lacking).

It would be one thing to consider a potential severance if the requirements of section 1404(a) were the only obstacles to a transfer of the removed action, which is the situation that courts confronted in *Wyndham* and in cases that have followed *Wyndham*. In this case, however, I have determined that mandatory abstention principles apply. So far as we have been able to determine, no court has ever purported to use the severance power to create a new action that would evade the mandatory abstention provisions of section 1334(c). Frankly, it does not make sense to suggest that severance powers could be used to accomplish such a result. The very act of ordering a severance under Rule 21 would be an *exercise* of jurisdiction over the action and over the parties – and exercising jurisdiction is precisely what the statute mandates that I abstain from doing.

In short, the mandatory abstention provisions require that I consider the status of the case as it has been removed to me before I exercise any authority over the claims and the parties. I cannot evade the mandatory abstention rules by reconstructing the case, or by dividing it into parts, because the issuance of any such ruling would itself be a violation of the mandatory abstention statute.

**Further Proceedings**

As I noted above, a strong argument might be made that transfers of bankruptcy-related cases should not be subject to the limitations of sections 1404(a) and 1412. Similarly, one might argue that the mandatory abstention provisions should be relaxed in cases such as the one presently before the Court. But those are decisions for Congress to make. As the case presently stands, I do not believe I have the statutory right to retain jurisdiction, and I would not have the statutory power to transfer the case even if mandatory abstention principles did not apply. For these reasons, I will issue an Order that denies the transfer motion and that directs that the case be remanded to the state court. However, it is not clear to me that doing so should be of any real consequence to the Debtors.

The state court action against the Debtors themselves is stayed by virtue of the Debtors' bankruptcy filings. Accordingly, the state court action may not proceed against the Debtors unless and until the New Jersey Bankruptcy Court grants relief from the stay. No person or court should construe my remand of the case as affecting the application of the automatic stay. Any relief from that stay must be sought from the New Jersey Bankruptcy Court, where the Debtors' cases are pending.

As noted above, it appears that the only "claim" against Mr. Besch in the state court action is a contention that he should be held liable on "alter ego" theories. The New York Court of Appeals has made clear that under New York law an "alter ego" or "veil piercing" argument is not a separate, stand-alone cause of action. *See Matter of Morris v. New York State Dept. of Taxation & Fin.*, 623 N.E.2d 1157, 1160-61 (N.Y. 1993). Instead, piercing the corporate veil, or awarding alter ego relief, is a remedy that a plaintiff may pursue to collect a claim against a company. *Id.* If New York law (or the law of a state that applies similar rules) governs the alter

ego assertions in the remanded case, then the purported "claims" against Mr. Besch would not really be separate "claims" at all. Instead, they would constitute purported remedies for the collection of claims owed by the Debtors. It is hard to see how such contentions could proceed separately from the claims against the Debtors themselves. If the alter ego contentions are just remedies, then it would appear that at a minimum the claims against the Debtors would need to be resolved (which may happen in the New Jersey Bankruptcy Court) before "remedies" against Mr. Besch could be pursued.

In addition, even if alter ego arguments give rise to separate "claims" (as they do in some jurisdictions) there may be disputes in the New Jersey Bankruptcy Court as to whether such claims belong to the Debtors' estates as opposed to Multibank. *See, e.g.*, *Music Mix Mobile LLC v. Newman (In re Stage Presence, Inc.)*, Adv. Pro. No. 15-1392 (MEW), 2018 Bankr. LEXIS 3295 at *8-17 (Bankr. S.D.N.Y. Oct. 26, 2018). Those potential disputes raise issues that would need to be resolved in the New Jersey Bankruptcy Court, as that court has exclusive jurisdiction over the Debtors' property. If the claims were found to belong to the estate (and not to Multibank), then the automatic stay would bar Multibank from pursuing them, as doing so would constitute an attempt to exercise control over the Debtors' property.

Finally, the Debtors remain free to ask the state court to clarify the scope of the severance that it has ordered, or (to the extent necessary) to issue an order that actually does separate the Novel action from the action against the Debtors and Mr. Besch. Such an order might permit the Debtors to renew a removal of the case and to renew their transfer motion.

### <u>Conclusion</u>

For the foregoing reasons, the Debtors' motion to transfer the removed action is denied, and Multibank's request that I abstain and that I remand the removed action to the New York

State Supreme Court is granted, without prejudice to the defendants' rights to move in the New York State Supreme Court for a severance of the action insofar as it relates to the Debtors and to James Besch, and without prejudice to a further removal and a renewal of the motion to transfer in the event the New York State court grants such a severance to the extent that such removal and renewal are permitted under applicable law and rules.  A separate order will be entered to this effect.

Dated: New York, New York
       November 27, 2018


                              **s/Michael E. Wiles**
                              Honorable Michael E. Wiles
                              United States Bankruptcy Judge